**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ELIZABETH ANN FRAZIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:14-cv-00872** |
| **v.** | ) | **Judge Sharp** |
| | ) | |
| **NANCY BERRYHILL,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record*

(Docket Entry No. 14). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for

disability insurance under Title II , as provided by the Social Security Act ("the Act"). Upon review

of the administrative record as a whole and consideration of the parties' filings, the Court finds that

the Commissioner's determination that Plaintiff is not disabled under the Act is supported by

substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be

denied.

**I. INTRODUCTION**

Plaintiff, Elizabeth Frazier, filed a Title II application for disability insurance on August 13,

2010, alleging disability as of August 16, 2003. (Tr. 29, 69, 144-45). Plaintiff's claim was denied

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on
January 23, 2017, and is therefore substituted as Defendant. *See* Fed. R. Civ. P. 25(d).

at the initial level on November 30, 2010, and on reconsideration on June 3, 2011. (Tr. 69-74, 75-78). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on October 18, 2012. (Tr. 41, 100, 106). On November 9, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 26-36). Plaintiff timely filed an appeal with the Appeals Council, which issued a written notice of denial on January 29, 2014. (Tr. 1-5). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. ALJ FINDINGS

The ALJ issued an unfavorable decision on November 9, 2012. (AR p. 26). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 16, 2003 through her date last insured of June 30, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: degenerative disc disease, fibromyalgia, Sjogren's and residuals of atrial septal defect repair (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she could lift 20 pounds occasionally and ten pounds frequently, could sit for six hour in an eight-hour workday and could stand/walk for six hours in an eight-hour workday. However, she could only occasionally balance stoop, knee, crouch, crawl and climb ramps and stairs. She could never climb ladders, ropes or scaffolds.

6. Through the date last insured, the claimant was capable of performing past relevant work as a cafeteria manager, DOT code 187.167-106, which is SVP7. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 16, 2003, the alleged onset date, through June 30, 2009, the date last insured (20 CFR 404.1520(f)).

(AR pp. 31-36).

## III. REVIEW OF THE RECORD

Plaintiff was born on May 11, 1953, and alleges that she became disabled on August 16, 2003. (Tr. 29, 144). In her Disability Report, Plaintiff alleged disability due to "[d]epression, injuries to neck, back, joints, degenerative disc disease." (Tr. 167). The following summary of the medical record is taken from the ALJ's decision:

The claimant testified that she was injured in an accident, in both June and August of 2003. She began to have back pain that spread into her legs. She testified that she began to have joint pain in 2007. Both Dr. McFerland and Dr. Cuevas treated the claimant during that time. Dr. McFerland sent her to a pain clinic. She testified that before June of 2009, her date last insured, she experienced significant pain and secondary limitations in her lower back, feet and legs. She also had issues with foot pain and chronic fatigue. She testified that her doctor blamed the pain for the fatigue. She also testified to memory problems and anxiety attacks, but the timing of those conditions was less than clear in her testimony.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Notes from Dr. Leslie Cuevas show a diagnosis of Sjogren's in March of 2008. However, when the claimant was seen in September of that same year, at Vanderbilt Hospital, there was no mention of the condition. There is no indication that the claimant has received ongoing treatment or has suffered any significant limitations from the condition. Exhibits 2F and 3F.

The claimant had CTs (with contrast) and myelograms done in July 2004 that revealed cervical and lumbar disc bulges. At C4-5 and C5-6, she had minimal spondylitic disk bulges. At L4-5, she had mild broad-based spondylitic disk bulge, no focal disk herniation and neural foramina and facet joints intact. At L5-Sl, she had mild right lateral disc protrusion. There was no significant stenosis in any of the joints. In 2005, the claimant's records from Dr. McFerland show degenerative disc disease under his "Assessment," but the imaging studies suggest that the degenerative disc disease was very mild at that time. Exhibits 1F and 6F.

In April of 2007, the claimant had another MRI, secondary to complaints of low back pain, paresthesia and weakness in her legs. The images showed mild degenerative disk disease changes in the mid and lower lumbar spines. The images revealed mild central canal stenosis at L4-5, but no focal disk herniation or nerve root impingement. Exhibit 5 F.

In December of 2009, almost six months after the claimant's date last insured, the claimant visited Dr. Vaughn Allen, with continued complaints of back, leg and neck pain. He ordered MRIs that were very similar to those ordered years earlier. The lumbar images again showed mild and nominal readings. At L4-L5, there was moderate narrowing, but that moderate narrowing caused only mild stenosis. At L5-Sl, there was mild and minimal stenosis. The cervical images showed a little change. There was mild to moderate central stenosis at C5-C6 with mild foraminal stenosis. At C4-C5, the stenosis was mild. Dr. Allen recommended pain management for her degenerative disc disease and fibromyalgia. Exhibit 4F.

The claimant saw Dr. Ifeanyi Obianyo in the later part of 2010 and in early 2011. She consistently complained of back, neck, arm and leg pain and paresthesia, but there are no comments in the record that solidifies onset date and severity. Another cervical MRI was done in March of 201 l, and this time, the radiologist used the words "mild" and "minimal" to describe the stenosis from the claimant's degenerative disc disease. It appears that there has been no significant change from the findings of 2005. Exhibit 16F.

In June of 2011, the claimant established her care with Dr. Cathy L. Hammond-Moulton. She  told the doctor that she had been diagnosed with fibromyalgia the previous year. She also said that her pain was the result of two back-to-back motor vehicle accidents in 2003. The claimant alleged to have a low back bulging disc and said that Dr. Lambert had performed an MRI in March of her shoulders, neck and arm. She said she also received steroid shots in March. She complained of numbness and tingling in both hands. Upon examination, the physician found vertebral spine tenderness in the lower back and palpable paraspinals spasm. However, the motor system was labeled normal. Additionally, the doctor noted a normal gait. The claimant visited this same physician in July and the doctor again described her gait as normal and her motor system as normal. In August

of 2011, the claimant saw her physician for a sore throat, but she made no mention of musculoskeletal pain, based on the office visit notes. She visited the doctor again in October with chest congestion, but this time she mentioned pain in her right shoulder. This recitation of treatment since May of 2009 is significant only because it shows times without complaint even after the date last insured. More importantly, the claimant returned in December of 2011 with allergic rhinitis and back pain. Her description of the back pain was that it had been chronic, but not constant. The physician wrote, "Pains in the upper back, arm and low back ongoing and intermittent for yrs, but recently, about 2 weeks ago, began again w/ the left elbow to the upper shoulder and neck." This description suggests that the claimant's testimony of constant, debilitating pain that causes an inability to stand without being bent-over is perhaps exaggerated. None of the treating physicians describes her condition as such. 17F

The claimant was diagnosed with fibromyalgia by at least 2005. In January of that year, the claimant's physician, Dr. McFerland, wrote in his office notes, "She reports chronic pain in her neck, legs, etc and she states, I refuse to work,' 'It kills me to lift my head up.' She again speaks in a stoic and matter of fact fashion essentially demanding that she is entitled to disability." Although the doctor's "Assessment" included the diagnosis of fibromyalgia, under the doctor's "Plan," he wrote, "Discussed my concerns with her and the fact that although she has chronic soft tissue pain, I cannot consider her disabled by this." Exhibit 6.

The claimant visited Dr. Leslie Cuevas in early 2006 and was again diagnosed with fibromyalgia.  She returned in December of 2007, explained she had been "lost to follow up" because of discovery and repair of ASD, and complained of severe joint and muscle pain. She had been found to have a positive rheumatoid factor and had 18 out of 18 trigger points. The diagnoses were positive rheumatoid factor, fibromyalgia, and vitamin D deficiency. Dr. Cuevas noted that the claimant had negative side effects from Lyrica and suggested that she would benefit from regular exercise and better sleep. Exhibit 2F.

The claimant returned to see Dr. McFarland in December of 2006, but then waited almost a year before returning in November of 2007. It looks as if they may have spoken by phone in June of 2008, when she asked for the filling of some forms regarding disability based on a motor vehicle accident in 2003. There are no other notes or opinions provided by Dr. McFarland. It appears he treated her for pain for several years, but did not consider her pain disabling at the time he last commented on the subject in 2005.

In December of 2006, the claimant was preparing for parathyroid surgery, when an ECG identified an atria septal defect that required surgery. In February of 2007, the claimant saw her heart surgeon and reported that since the closure of her atrial septal defect the previous December, her symptoms had improved substantially and that she

was "not that short of breath anymore and she [could] do more than what she had been in the past. An echocardiogram ... revealed a well-seated ADS device without evidence of left or right shunt. She denied chest pain, palpitation or syncope." In April of 2007, the claimant saw the cardiologist for another follow up visit. Dr. David Zhao noted that the claimant had done well since her surgery and was not having any symptoms suggestive of procedural complications. Her echocardiogram revealed an ejection fraction of 55-65% without any valvular disease noted. Exhibit 3F.

The claimant had a chest x-ray in February of 2011. The radiologist noted the endovascularly placed occlusive device within the atrial septal defect, as well as mild cardiomegaly, but concluded, "no acute cardiopulmonary disease identified." It appears the claimant has sustained a good recovery from the heart repair and is free of symptoms related to the defect. Exhibit 13F.

The claimant saw Dr. Brnce Davis in October of 2012, more than three years after the date last insured. His observations can be only guesses as to the claimant's condition in 2009. He summarized her medical history, complaints and observations. He saw a normal gait and full range of motion in both shoulders. She had slow, but normal motion in her wrists, hands and fingers. Her gait maneuvers, such as heel-toe and tandem, were normal, but slow. Dr. Davis concluded that the claimant could lift/carry ten pounds both occasionally and frequently, could sit for one to two hours at one time and four to six hours in an eight-hour workday. She could stand/walk for only four hours in an eight-hour workday. He also limited the claimant's neck motions, grip, climbing, squatting, extreme heat and cold, and movement on uneven surfaces. While this evaluation of the claimant's residual functional capacity in October of 2012 is not challenged, it is not considered a dependable assessment of her condition in May of 2009. The letter sent to Dr. Davis by the claimant's attorney, providing medical history and asking for an onset date for the claimant's present symptoms, does not contain the earlier quoted opinion of Dr. McFerland that the claimant's condition did not qualify her for disability at that time. Dr. Davis' hand written note on the attorney's summary is not based on the complete record as supplied by Dr. McFerland. Even so, the limited range of light exertion level work assigned in the residual functional capacity above, is not significantly different than this opinion issued three years after the date last insured.  15B and 18F.

(AR pp. 33-35).

During the hearing, she and her attorney made reference to chronic fatigue, carpal tunnel syndrome and joint pain.

Notes from Dr. McFerland include depression in the assessment part of the record, but there is no discussion of the condition. In June of 2011, when the claimant began treatment with Dr. Cathy L. Hammond-Moulton, her record noted "no depression."

Although depression may be an occasional problem, the record does not reflect any sustained treatment from a mental health provider and does not support the allegation of depression as a severe impairment. Exhibits 6F and 17F.

The claimant's allegations of joint pain are credible, but not to the extent that they qualify as a severe impairment. Dr. Bruce Davis examined her in 2012 and found that she had no tenderness in her wrist or hand. She had normal finger sensation, fist making and finger-thumb opposition. She had reduced grip, but no atrophy and no swelling, redness, warmth or nodules. She had full range of motion in both shoulders and elbows. Although she had a positive rheumatoid factor from a blood panel, her joint limitations are not severe, based on the observations of Dr. Davis. The doctor suspected that she might have carpal tunnel syndrome, but at the time of her date last insured, there is no evidence that this condition was a medically diagnosed impairment. Exhibit 18F.

Although fatigue may be a symptom accompanying her fibromyalgia, it is not a medically diagnosed impairment. Her doctor opined that it was the result of pain.

(AR pp. 31-32).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126

(1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the

claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work.

*Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the

claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6ᵗʰ Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that (1) the ALJ's finding that Plaintiff can perform light work and can return to her past relevant work was not based on substantial evidence; (2) the ALJ's finding that Plaintiff's depression, carpal tunnel syndrome, and joint pain were not severe impairments was not based on substantial evidence; and (3) the ALJ failed to apply the proper pain standard and failed to evaluate properly and assess Plaintiff's credibility. (Docket Entry No. 12, at 12-19). Plaintiff contends that the Commissioner's decision should be reversed under the fourth sentence of 42 U.S.C. § 405 (g) with instructions to award benefits. *Id*. at 19.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is

lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of error are addressed below.

*1. The ALJ's finding that Plaintiff can perform light work and can return to her past relevant work was not based on substantial evidence.*

Citing Social Security Ruling 82-62, Plaintiff argues that because there is not any medical evidence that supports the ALJ's finding that Plaintiff can perform light work the ALJ erred in finding that Plaintiff could return to her past relevant work as a cafeteria manager. (Docket Entry No. 12, at 12). Plaintiff contends that "the ALJ did not cite to any medical opinions from treating or examining physicians that supported his finding that Mrs. Frazier could perform light work. . . . Dr. Davis's assessment does not support a finding that Mrs. Frazier can perform light work." *Id.* at 14. Plaintiff argues that because Dr. Davis limited her to a sedentary RFC Plaintiff would therefore be eliminated from all past relevant work and would meet the Grids on her 55th birthday, resulting in a favorable decision for her. *Id.* In response, Defendant contends that the record as a whole supports the ALJ's finding that Plaintiff was not disabled for the relevant period between August 16, 2003, and June 30, 2009, and that the ALJ properly determined that Plaintiff's allegations were not supported by the medical evidence. (Docket Entry No. 13, at 5, 7).

To qualify for disability insurance benefits, an individual "must establish 'the onset of disability *prior* to the expiration of his insured status.'" *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) (citation omitted) (emphasis in original); *Redding v. Shalala*, No. 94-3471, 1995 WL 299027, at *3 (6th Cir. May 16, 1995) ("[A] claimant must show that he not only had an impairment

prior to the expiration of his insured status but that he actually became disabled prior to that time.").

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir.2004) (citation omitted). Such evidence "must relate back to the claimant's condition prior to the expiration of her date last insured" to be relevant. *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The record reflects that Plaintiff's insured status expired on June 30, 2009, and Plaintiff therefore must prove that she became disabled prior to June 30, 2009, in order to qualify for disability benefits.

In addressing past relevant work, SSR 82-62 provides, in part:

> Determination of the claimant's ability to do [Past Relevant Work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> . . . .
>
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

1982 WL 31386, at *3, 4 (S.S.A. January 1, 1982).

The ALJ noted that Plaintiff was injured in two vehicle accidents in June and August of 2003, and that she began experiencing pain in her lower back and legs. (Tr. 33, 34, 49, 257). The ALJ noted that Plaintiff's medical records showed that Plaintiff had CTs (with contrast) and myelograms done in July 2004 that revealed cervical and lumbar disc bulges. (Tr. 33, 223). At C4-5 and C5-6, Plaintiff had minimal spondylitic disk bulges, and at L4-5, she had mild broad-based spondylitic disk bulge, no focal disk herniation and neural foramina and facet joints intact. (Tr. 33, 223-25). At L5-Sl, Plaintiff had mild right lateral foraminal disk protrusion. (Tr. 33, 225). The records did not show any significant stenosis in any of the joints. (Tr. 33).

In January 2005, Dr. Robert Ferland,[2] Plaintiff's treating physician, diagnosed Plaintiff with fibromyalgia and remarked that Plaintiff "reports chronic pain in her neck, legs, etc and she states, 'I refuse to work,' 'It kills me to lift my head up.' She again speaks in a stoic and matter of fact fashion essentially demanding that she is entitled to disability." (Tr. 34, 374). Under the doctor's "Plan," Dr. Ferland stated, "Discussed my concerns with her and the fact that although she has chronic soft tissue pain, I cannot consider her disabled by this." *Id*. Dr. Ferland notes depression, but there is no discussion of the condition. (Tr. 31, 374). Dr. Ferland referred Plaintiff to Dr. Leslie Cuevas early in 2006 for pain evaluation. (Tr. 34, 257). Dr. Cuevas diagnosed Plaintiff with fibromyalgia. (Tr. 34, 254-59).

The ALJ noted that in December 2006, Plaintiff had surgery to repair an atria septal defect. (Tr. 35, 294-302). In February of 2007, Dr. David Zhao, Plaintiff's heart surgeon, reported that

---

[2]Dr. Ferland is incorrectly referred to as Dr. McFerland or Dr. McFarland in the ALJ's decision.

since the closure of her atrial septal defect, her symptoms had improved substantially and that she was "not that short of breath anymore and she [could] do more than what she had been in the past. An echocardiogram . . . revealed a well-seated ADS device without evidence of left or right shunt. She denied chest pain, palpitation or syncope." (Tr. 35, 286). In an April 2007 follow up visit, Dr. Zhao noted that Plaintiff was doing well since her surgery and was not having any symptoms suggestive of procedural complications. (Tr. 35, 281-83).

In April 2007, Plaintiff had another MRI that revealed that she had mild degenerative disk disease changes of the mid and lower lumbar spine. (Tr. 33, 342). The images revealed mild central canal stenosis at L4-5, but that there was not any focal disk herniation or nerve root impingement. *Id*. Plaintiff returned to Dr. Ferland in November 2007. (Tr. 34, 387-88). Dr. Ferland does not mention depression in his assessment of Plaintiff. (Tr. 387-88). The ALJ noted that there were not any other medical records provided by Dr. Ferland after November 2007. (Tr. 34).

In December 2007, Plaintiff returned to Dr. Cuevas with complaints of severe joint and muscle pain. (Tr. 34, 252). Plaintiff was found to have a positive rheumatoid factor and had 18 out of 18 trigger points. *Id*. Dr. Cuevas diagnosed Plaintiff with positive rheumatoid factor, fibromyalgia, and vitamin D deficiency. *Id*. Dr. Cuevas noted that Plaintiff had negative side effects from Lyrica and suggested that she would benefit from regular exercise and better sleep. (Tr. 34, 253). In March 2008, Dr. Cuevas diagnosed Plaintiff with Sjogren's.[3] (Tr. 33, 248). The ALJ noted

---

[3]Sjogren's syndrome is defined as "a chronic inflammatory autoimmune disease that affects especially older women, that is characterized by dryness of mucous membranes especially of the eyes and mouth and by infiltration of the affected tissues by lymphocytes, and that is often associated with rheumatoid arthritis." https://www.merriam-webster.com/medical/sjogren

that there were not any medical records showing that Plaintiff received ongoing treatment or suffered any significant limitations from Sjogren's. (Tr. 33).

In December of 2009, Plaintiff visited Dr. Vaughan Allen, with complaints of back, leg and neck pain. (Tr. 33, 332). The MRIs showed at L4-L5 there was moderate narrowing with mild stenosis, at L5-Sl there was mild and minimal stenosis, there was mild to moderate central stenosis at C5-C6 with mild left foraminal stenosis, and mild stenosis at C4-C5. (Tr. 33, 334-35). Dr. Allen recommended pain management for her degenerative disc disease and fibromyalgia. (Tr. 33, 336). Plaintiff also had MRIs taken of her cervical spin e in March 2011, which showed there was mild left lateral recess stenosis and borderline central canal stenosis at C5-C6 and minimal left lateral recess stenosis and mild left foraminal stenosis at C6-C7. (Tr. 33-34, 485). The ALJ noted that there did not appear to have been significant change from previous findings. (Tr. 34). *See Steed v. Astrue,* 524 F.3d 872, 875 (8th Cir. 2008) (finding that substantial evidence supported the ALJ's conclusion the plaintiff could perform light work and suffered only mild degenerative changes to her back condition where her "diagnostic tests showed actual disc herniation or bulging," but the diagnosis was tempered by words "mild" or "minimal" regarding either the herniation or its effects).

Dr. Cathy L. Hammond-Moulton in June and July 2011 reported that Plaintiff had vertebral spine tenderness in the lower back and palpable paraspinal spasm, but that her motor system was normal and that she had a normal gait. (Tr. 34, 494, 497).

Plaintiff visited Dr. Bruce Davis in October 2012, which the ALJ noted was three years after the date last insured. (Tr. 35, 512-15). Dr. Davis opined that Plaintiff could lift 10 pounds occasionally and frequently, sit for 4 to 6 hours in an 8-hour workday, and stand/walk for 4 hours in an 8-hour workday. (Tr. 515). Dr. Davis also limited Plaintiff's neck motions, repetitive/forceful

grip, climbing, squatting, extreme heat and cold, and movement on uneven surfaces. *Id*. Dr. Davis opined that Plaintiff's postural limitations began in 2005. (Tr. 141).

At the hearing, the ALJ remarked that Dr. Ferland's disability assessment form was not part of the record. (Tr. 52). The ALJ remarked to the vocational expert that he did not see any RFCs in the medical records that related back to time period where Plaintiff was insured. (Tr. 65-66). In his decision, the ALJ did not consider Plaintiff's RFC in October 2012 to be a dependable assessment of Plaintiff's condition prior the expiration of insurance status. (Tr. 35). The ALJ noted that the "letter sent to Dr. Davis by the claimant's attorney, providing medical history and asking for an onset date for the claimant's present symptoms, does not contain the earlier quoted opinion of Dr. []Ferland that the claimant's condition did not qualify her for disability at that time." *Id*. The ALJ further noted that his RFC determination was not significantly different than Dr. Davis's opinion issued three years after the date last insured. *Id*.

At the hearing, the ALJ posed a hypothetical question to the vocation expert that included the limitations in Plaintiff's RFC. (Tr. 64). The vocational expert testified that such a person could perform Plaintiff's past relevant work as a cafeteria manager. *Id*. In his decision, the ALJ found the following:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as generally performed. This finding is supported by the testimony of the vocational expert, Dr. Gary Sturgill, who concluded that based upon the residual functional capacity noted above, the claimant would be capable of performing her past work as a cafeteria manager.

(Tr. 36).

"[T]he ALJ is charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x

719, 728 (6th Cir. 2013). The RFC does not need to be based on a particular medical opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). The RFC does not need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability. *Rudd*, 531 F. App'x at 728.

Here, it appears the ALJ took the entire record into account before rendering his decision. After a thorough review of the entire medical record, the Court concludes that the ALJ's decision regarding Plaintiff's RFC and Plaintiff's ability to perform her past relevant work is supported by substantial evidence.

*2. The ALJ's finding that Plaintiff's depression, carpal tunnel syndrome, and joint pain were not severe impairments was not based on substantial evidence.*

Plaintiff argues that ALJ failed to consider Plaintiff's depression, carpal tunnel syndrome, and joint pain as severe impairments. As to depression, the ALJ correctly found the following:

> Notes from Dr. []Ferland include depression in the assessment part of the record, but there is no discussion of the condition. In June of 2011, when the claimant began treatment with Dr. Cathy L. Hammond-Moulton, her record noted "no depression." Although depression may be an occasional problem, the record does not reflect any sustained treatment from a mental health provider and does not support the allegation of depression as a severe impairment.

(Tr. 31). Additionally, in Plaintiff's last visit to Dr. Ferland in November 2007, Dr. Ferland did not mention depression in his assessment of Plaintiff. (Tr. 387-88).

A mere diagnosis of a condition does not establish a severe impairment or the existence of a functional limitation. *Marcum v. Colvin*, No. CV 16-86-WOB-CJS, 2017 WL 1129943, at *8 (E.D. Ky. Feb. 28, 2017), report and recommendation adopted, No. CV 2016-86 (WOB-CJS), 2017 WL 1129594 (E.D. Ky. Mar. 24, 2017); *Higgs*, 880 F.2d at 863 ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.") (citing *Foster*, 853 F.2d at 489

(diagnosable impairment not necessarily disabling)). "[I]t is [the plaintiff's] burden to prove the severity of her impairments." *Higgs*, 880 F.2d at 863 (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir.1986)).

Accordingly, based upon a review of the medical records, the Court concludes that the ALJ's finding regarding Plaintiff's depression is supported by substantial evidence.

As to Plaintiff's joint pain and carpal tunnel syndrome, the ALJ found:

> The claimant's allegations of joint pain are credible, but not to the extent that they qualify as a severe impairment. Dr. Bruce Davis examined her in 2012 and found that she had no tenderness in her wrist or hand. She had normal finger sensation, fist making and finger-thumb opposition. She had reduced grip, but no atrophy and no swelling, redness, warmth or nodules. She had full range of motion in both shoulders and elbows. Although she had a positive rheumatoid factor from a blood panel, her joint limitations are not severe, based on the observations of Dr. Davis. The doctor suspected that she might have carpal tunnel syndrome, but at the time of her date last insured, there is no evidence that this condition was a medically diagnosed impairment.

(Tr. 32).

Plaintiff cites to medical records from Dr. Allen, Dr. Obianyo and Dr. Hammond-Moulton (Tr. 336, 466, 497-515) in support of her argument that she suffered from carpal syndrome that the ALJ should have found was a severe impairment. (Docket Entry No. 12, at 15-16). However, these medical records are dated after the expiration of her insured status. Plaintiff does not cite any diagnosis of carpal tunnel syndrome prior to the expiration of her insured status. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong*, 88 F. App'x at 845. Thus, the Court concludes that the ALJ properly concluded that the impairment was not medically determinable prior to the expiration of her insured status.

*3. The ALJ failed to apply the proper pain standard and failed to evaluate properly and assess Plaintiff's credibility.*

Plaintiff argues that the ALJ failed to apply the proper pain standard and has mischaracterized the evidence in the record in finding Plaintiff only partially credible. (Docket Entry No. 12, at 16). Plaintiff argues that the record contains abundant references to long-standing pain suffered by Plaintiff and that "[t]hese findings were apparently never considered and the [ALJ's] decision is contrary to the Commissioner's policy in evaluating the severity of the Claimant's fibromyalgia syndrome." *Id.* at 17. Plaintiff also contends that the ALJ failed to consider Plaintiff's work history "which supports a favorable inference regarding credibility." *Id.* at 18. Defendant contends that the ALJ properly found Plaintiff's allegations inconsistent with the record as a whole, including her treatment and medical proof. (Docket Entry No. 13, at 5).

"In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) (quoting SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)). "Social Security Ruling 96-7p . . . requires the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). An ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); *see Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th

Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as" the ALJ's treatment of the evidence as a whole shows that the ALJ "implicitly resolve[d] such conflicts.") (citations and internal quotation marks omitted); *accord Bowman v. Chater*, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997). If an ALJ "simply erred in a factual finding," courts "are not to second-guess," "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "[H]armless error analysis applies to credibility determinations in the social security disability context." *Id.*

Title 20 C.F.R. § 404.1529(c)(3) provides:

Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work—

(3) Consideration of other evidence. Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.*

"An ALJ, however, is not required to explicitly discuss every § 404.1529(c)(3) factor in [the credibility] assessment." *Ausbrooks v. Astrue*, No. CIV.A. 12-12144, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013); *Barney v. Comm'r of Soc. Sec.*, No. 1:08-CV-1225, 2010 WL 1027867, at *2 (W.D. Mich. Mar. 18, 2010) (rejecting the plaintiff's argument that the ALJ should have considered his work history in the disability determination). In weighing the factors in 20 C.F.R. § 404.1529(c)(3), "the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's credibility determination is entitled to great deference. *Ulman*, 693 F.3d at 714 ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

The ALJ specifically found that Plaintiff's fibromyalgia was a severe impairment. (Tr. 31). As to Plaintiff's credibility the ALJ found the following:

> The claimant is considered only partially credible. Her testimony suggests total disability and many days spent without the capability to function. However, the office notes from treating physicians do not support her testimony. Dr. McFerland made it a point to note her attitude in 2005. The claimant told him she had been working since she was 14 years old and refused to work anymore. He concluded that she was not disabled at that time. The imaging studies do not support her allegations of pain. She had studies done in 2004 that revealed only mild and minimal changes in her spine. Her latest MRIs do not suggest anything more severe than those taken in 2004. She appears to have fully recovered from her heart repair and now has an ejection fraction of 55 to 65 percent. While her fibromyalgia continues to be a problem, there is nothing in the record or the findings from Dr. Davis to suggest that she cannot sustain light exertion level work.

(Tr. 35-36).

Although Plaintiff testified that she could not walk long distances during the relevant time period (Tr. 57), Dr. Cuevas noted on April 27, 2006, that Plaintiff reported that she exercised 180 minutes, 3 to 4 days a week (Tr. 255), and noted on March 10, 2008, that Plaintiff reported that she exercised on a treadmill "almost every day." (Tr. 248). In May 2006, Dr. Cuevas stated that Plaintiff needed "regular non-strenuous exercise" (Tr. 254), and in December 2007, stated that Plaintiff would "benefit from regular exercise" (Tr. 253). The ALJ also noted Plaintiff's statements to Dr. Ferland in January 2005 that she "'refuse[d] to work'" and that she was "essentially demanding that she [was] entitled to disability." (Tr. 34, 35, 374). However, Dr. Ferland opined that her impairments were not disabling. (Tr. 374). As to Plaintiff's assertion that her work history supports her credibility, Plaintiff's earning also show that she had several years with no earnings and low earnings in other years. (Tr. 147).

In construing the record as a whole, the Court concludes that the ALJ properly evaluated Plaintiff's credibility based upon substantial evidence in the record.

*4. Evidence submitted to the Appeals Council.*

After the ALJ's decision, Plaintiff submitted to the Appeals Council Disability Claim Forms for American Bankers Life Assurance Company of Florida signed by Dr. Ferland, stating that Plaintiff was "permanently disabled" from her occupation, but the Appeals Council declined Plaintiff's request for review of the ALJ's decision. (Tr. 1-5, 18-25, 516-522). Contrary with his medical record dated January 20, 2005, Dr. Ferland remarked that Plaintiff's disability began on that date. (Tr. 19-25, 374, 516-522).

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 69–96 (6th Cir. 1993)); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."). Thus, Plaintiff's reference that "Dr. Ferland's opinion regarding continuing disability from 2005 forward only bolsters the opinion of Dr. Davis," (Docket Entry No. 12, at 14), cannot be considered part of the record for purposes of substantial evidence review.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record.* (Docket Entry No. 14).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE